## Case No. 5,368.

### GERNON et al. v. COCHRAN.

[Bee, 209.] [1]

District Court, D. South Carolina. Aug. 9, 1804.

PRIZE—REFERENCE TO RESPECTIVE GOVERNMENTS OF THE PARTIES—DECISION BY MINISTERS—EVIDENCE OF — MASTER OF VESSEL AS AGENT OF OWNERS AND SHIPPERS.

1. Parties agreeing to refer a matter of prize or no prize to their respective governments shall be concluded by the decision of the ministers of those governments resident here.

2. Such decision sufficiently evidenced by a letter from the consul general of the party against whom the decision is made, stating what the ministers had ordered him to communicate as their determination.

3. Consuls represent the subjects of their respective nations (if not otherwise represented), where such consuls reside.

[Cited in Harrison v. Vose, 9 How. (50 U. S.) 382.]

4. A captain of a ship, in a foreign port represents both owners and shippers not having any other agent on the spot.

Before BEE, District Judge.

Carvin, owner of a French privateer, had captured this Spanish brig at a time when it was insisted, that no such capture could be legally made, peace having then taken place between France and Spain. By recurrence to the proceedings of this court so far back as August, 1796, it appeared that a suit was instituted by the Spanish consul against the Ceres; but, no libel having been filed, that suit was, upon motion, dismissed. On the 30th of November following, the Spanish consul instituted another suit, and on the 14th of December following, before any other proceedings were had than a return of the warrant and proclamation for claim, the parties, by their proctors, obtained an order, founded on consent, that the marshal [Cochran] should sell the brig Ceres and cargo, and pay the net amount according to the stipulations of the following agreement between Carvin, owner of the privateer, on the one part, and Gernon, captain of the Spanish brig Ceres, on the other. It was also signed by the consuls of France and Spain. "Whereas we find it impossible to settle definitively the difference existing between us, as to the validity of the capture of the brig Ceres, by the privateer LeVengeur, we do therefore, refer the decision of the matter to our respective governments, obliging ourselves respectively to pay such damages and interest, as the said governments shall award. In the mean time we consent that the said vessel and her cargo, shall be sold by the marshal of the court of admiralty of South Carolina at public auction, for cash, after a notice of twelve days in the gazettes of Charleston. We consent, that the said marshal shall receive the amount of the sales, and after deducting therefrom

[1] [Reported by Hon. Thomas Bee, District Judge.]

all customhouse charges, and other necessary expenses, shall lodge the balance in the Bank of South Carolina, to be paid over to the party, in whose favour the two governments shall decide: for which purpose no other form shall be required, than the production at the bank of a copy of said decision duly legalized by the consuls of France and of Spain. Reserving to ourselves respectively, a right to adopt such means for obtaining a decision favourable to our claims as to each of us may seem most expedient." "(Signed) Carvin. Gernon." On the 10th of June, 1796, a letter was produced from the consul general of France at Philadelphia, to the French consul in Charleston, which states that the ministers of France and Spain at Philadelphia had determined the prize to be illegal, and ordered restitution thereof to the persons entitled thereto: they further directed that appraisers should be appointed to ascertain damages for detention.

The judge said that this certificate of the consul general of France was conclusive, as to a decision on the point contained in the agreement; and that such decision by the ministers of the two countries, resident in the United States, was sufficient to justify him in saying that the two governments had decided, and in ordering the agreement to be carried into execution. He added that, though doubts might have arisen as to the original power of the court to order a sale, yet, as it had been made by the solemn consent of all the parties in whom any interest then appeared, and as the agreement was sanctioned by the French and Spanish consuls, who are general agents for the subjects of their respective countries, not otherwise represented, no objection to the jurisdiction could now be suffered to avail. The marshal was, therefore, ordered to pay into the Bank of South Carolina, the balance in his hands of the proceeds of sale referred to, in the agreement, in the name and for the use of Gernon, and sundry other persons, who have since produced powers of attorney from those interested in the vessel and cargo. Gernon had originally been mate of the Ceres, but appointed captain by one Golibart, who then commanded her. A letter of attorney from Golibart to Gernon was produced, and contained full powers to act in Golibart's name and stead. This, the judge said, made him lawful representative, in a foreign port, of the owners and shippers concerned in the Ceres and her cargo, unless some more special power to the contrary should appear. Even admitting, as had been asserted, but not proved, that Golibart was dead, still Gernon's power subsisted as to all such of the concerned as had not thought fit, in the long period of eight years, from the commencement of these proceedings, to divest him of his general authority, by some special revocation of it. Three of the parties had done this. As it could not be doubted that the rest had received equal information of the

state of the vessel, their silence must be construed into an acquiescence in Gernon's agency.